UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALORIA FEH,<br><br>                         Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>                         Respondents. | Case No.: 26cv0578-LL-BLM<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241** |

Before the Court is Petitioner Valoria Feh's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Response [ECF No. 4], and Petitioner filed a Traverse [ECF No. 5]. For the reasons set forth below, the Court **GRANTS** the Petition.

I.     BACKGROUND

Petitioner Valoria Feh, a citizen of Cameroon, has been detained since he arrived in the United States on January 25, 2025 after fleeing threats from Cameroon's military who accused him of arming separatists. Pet. at 2. An immigration judge ordered Petitioner's removal on July 31, 2025, but also granted him withholding of removal to Cameroon. *Id.* at 2, 7. Petitioner reserved appeal of the immigration judge's decision, but did not file an appeal by the August 29, 2025 deadline. ECF No. 4-1, Declaration of Concepcion

1

Arredondo ("Arredondo Decl."), ¶ 9. ICE has been, and is still, trying to find third countries that may be willing to accept Petitioner for removal. *Id.* ¶¶ 10–11.

On January 29, 2026, Petitioner filed the instant Petition alleging that there is "no significant likelihood of removal in the reasonably foreseeable future" and that he is entitled to immediate release under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Pet. at 2. Petitioner also seeks the enjoinment of his removal to a third country without advance notice and an opportunity to be heard. *Id.* at 10.

## II.   LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III.   DISCUSSION

Petitioner contends that because he has been detained for about six months after receiving withholding of removal to Cameroon and there is "no significant likelihood of removal in the reasonably foreseeable future," he is entitled to immediate release under *Zadvydas*. Pet. at 2. Petitioner also seeks to enjoin his removal to a third country without advance notice and an opportunity to be heard. *Id.* at 10. Respondents argue that Petitioner is properly detained under 8 U.S.C. § 1231(a), and that "[t]o the extent Petitioner is challenging ICE's decision to detain him for the purpose of removal," it is precluded by 8 U.S.C. § 1252(g). ECF No. 4 at 2–3, 6–7.

### A.   Jurisdiction

Section 1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28,

or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

The Court finds § 1252(g) does not bar its jurisdiction over Petitioner's claims. The Supreme Court has explained that § 1252(g) does not bar jurisdiction for the "universe of deportation claims" but instead "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *2 (9th Cir. Aug. 27, 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."). The Supreme Court later reiterated this narrow application of § 1252(g): "We did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). Petitioner is not challenging the execution of his removal order but is instead challenging the lawfulness of his continued detention and the due process required in removals to third countries. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88, 121 S. Ct. 2491, 2497, 150 L. Ed. 2d 653 (2001) (confirming that 28 U.S.C. § 2241 confers jurisdiction on federal courts to review custody challenges for individuals with final removal orders); *Ibarra-Perez*, 2025 WL 2461663, at *2 (noting that a claim based on a lack of legal authority to execute a removal order due to a violation of a court order, the Constitution, INA, or international law, does not challenge the decision or action to execute a removal order). Therefore, § 1252(g) does not limit the Court's jurisdiction in this matter.

**B.    Petitioner's Detention and *Zadvydas***

When a noncitizen has been found to be unlawfully present in the United States and a final order of removal has been entered, they must be detained for up to ninety days

pending the government's efforts to secure their removal. *See* 8 U.S.C. § 1231(a)(1)–(2). This ninety-day period is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). After the removal period, this statute "limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States" and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If the petitioner satisfies their initial burden, then the burden shifts to the government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the noncitizen's release may be "conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* at 700; *see* 8 U.S.C. § 1231(a)(3).

Assuming without deciding that Petitioner's removal order became administratively final on August 29, 2025, Petitioner has been detained for over six months since then.[1] Thus, the Court finds Petitioner's current detention is no longer "presumptively reasonable."

Petitioner now has the initial burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. "Good reason to believe does not place a burden upon the detainee to

---

[1] Petitioner contends that his order of removal was final on July 31, 2025. Pet. at 7. Respondents attest that on July 31, 2025, Petitioner reserved appeal of the denial of his asylum application, but when he failed to file an appeal by the August 29, 2025 deadline, the order of removal became final on that date. Arredondo Decl. ¶ 9.

demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (cleaned up) (citations omitted). However, Petitioner must offer more than "conclusory statements suggesting that he will not" be removed. *Andrade v. Gonzalez*, 459 F.3d 538, 543 (5th Cir. 2006); *Quassani v. Killian*, Case No. 2:17-cv-01678-APG-PAL, 2017 WL 3396506, at *2 (D. Nev. Aug. 4, 2017) (questioning "whether petitioner can meet his initial burden" given that he "has offered nothing more than conclusory statements with respect to the likelihood of his removal in the foreseeable future").

The Court finds Petitioner has met his burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Petitioner cannot be removed to his home country because he was granted withholding of removal to Cameroon. Despite cooperating with ICE on his removal, ICE has never identified a third country that would accept Petitioner for removal in these past six months. ECF No. 1-2, First Declaration of Valoria Feh ("Feh Decl."), ¶¶ 3–6. Petitioner notes a study that in fiscal year 2017, "there were at most 21 people of the thousands with withholding of removal deported to *any* country." Pet. at 9 & n.2. The Court finds Petitioner has sufficiently shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025) ("While the Court agrees that circumstances may evolve and that historical outcomes do not necessarily control the result in any particular case, the data nevertheless supports the general inference that removal for this particular class of detainees is substantially more difficult.").

The burden thus shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Respondents contend that ICE is diligently seeking a third country for Petitioner's removal; that San Diego Enforcement and Removal Operations (ERO) Field Office contacted ERO's Removal and International Operations (RIO) on August 18, 2025 for assistance in doing so and requested an update on January

14, 2026. Arredondo Decl. ¶¶ 10–11. RIO has not identified a third country for Petitioner's removal, "but efforts remain ongoing." *Id.* ¶ 11.

The Court finds Respondents have not shown there is a sufficient likelihood of removal in the reasonably foreseeable future. Despite Respondents' diligent efforts, a third country has not been identified in over six months. These unsuccessful efforts are not evidence that success is likely to occur "in the reasonably foreseeable future." *See, e.g., Souvannaseng v. Noem*, No. 3:25-CV-3473-CAB-DEB, 2025 WL 3641180, at *2 (S.D. Cal. Dec. 16, 2025) (finding a "vague assertion" that ICE was working diligently to effectuate a petitioner's removal, as well as statistics showing an increase in removals to petitioner's home country, was insufficient to show likelihood of removal in the reasonably foreseeable future); *Azzo v. Noem*, No. 3:25-CV-03122-RBM-BJW, 2025 WL 3535208, at *4 (S.D. Cal. Dec. 10, 2025) (finding the respondents failed to rebut the petitioner's showing where "[r]espondents have not even identified a third country to which they plan to remove Petitioner, much less submitted a travel document or provided an estimate for how long it would take this unidentified third country to respond"); *Gilali v. Warden of McHenry Cnty. Jail*, No. 19-CV-837, 2019 WL 5191251, at *5 (E.D. Wis. Oct. 15, 2019) ("While the respondent asserts that [the petitioner's] travel document requests with both the Moroccan and Iraqi Consulates remain pending and ERO continues to follow up on the documents' status, this is insufficient" because "[i]t is merely an assertion of good-faith efforts to secure removal; it does not make removal likely in the reasonably foreseeable future."). Therefore, the Court finds that under *Zadvydas*, because Petitioner met his burden to show removal is not reasonably foreseeable and Respondents failed to rebut this showing, his continued detention is "unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700.

**C.      Third-Country Removal**

Petitioner argues that if ICE did suddenly prove able to remove Mr. Feh to a third country, it would do so under a policy that violates the Fifth Amendment, the Convention Against Torture, and implementing regulations." Pet. at 10. Petitioner notes that a July 9,

2025 ICE Memo allows removal of a noncitizen to a third country with no notice or an opportunity to be heard if the country has given credible "assurances" that the removed person will not be persecuted or tortured. ECF No. 1-3 at 2. The memo also states that even without assurances, third-country removal can occur with twenty-four hours' notice—or as little as six hours if the noncitizen is given an opportunity to speak with an attorney prior to removal—and the government "will not affirmatively ask whether the alien is afraid of being removed to the country of removal." *Id.* (emphasis in original).

Respondents contend that prior to removal to a third country, ICE will provide written notice of the intended third country, and Petitioner will be referred to an asylum officer if he claims a fear of removal to that country. ECF No. 4 at 5; Arredondo Decl. ¶ 13. They further attest that ICE will generally wait twenty-four hours before removal, or six or more hours in "exigent circumstances" if the noncitizen is "provided reasonable means and opportunity to speak with an attorney prior to removal." Arredondo Decl. ¶ 12.

"ICE may not remove a noncitizen to a country if the noncitizen's life or freedom would be threatened in that country because of the noncitizen's race, religion, nationality, membership in a particular social group, or political opinion." *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1007 (W.D. Wash. 2019) (citing 8 U.S.C. § 1231(b)(3)). "If the noncitizen expresses fear of persecution or harm upon return to any of the countries designated by the [immigration judge], the [immigration judge] must inform the noncitizen that he or she may apply for asylum, withholding of removal, or relief under the Convention Against Torture." *Id.* (citing 8 C.F.R. § 1240.11(c)(1)). "[B]oth the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) (quoting *Aden*, 409 F. Supp. 3d at 1010 (first alteration in original)). "Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir.

1999). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724 (9th Cir. 2016).

This Court agrees with the other courts in the Ninth Circuit who have held that the policies provided in the July 9, 2025 ICE memo violate due process and Ninth Circuit precedent. *See, e.g.*, *Giebashvili v. Noem*, No. 25-CV-3432-BJC-VET, 2026 WL 114422, at *3 (S.D. Cal. Jan. 15, 2026) (collecting cases); *Azzo v. Noem*, No. 3:25-CV-03122-RBM-BJW, 2025 WL 3535208, at *7 (S.D. Cal. Dec. 10, 2025) (citation omitted); *Vu v. Noem*, No. 1:25-CV-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 728–29 (W.D. Wash. 2025); *see also A. A. R. P. v. Trump*, 605 U.S. 91, 95 (2025) ("[N]otice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster."). Respondents' description of the procedures in place for third-country removal is in agreement with the policies in the July 9, 2025 ICE Memo, and Respondents do not deny that the procedures in the memo are currently being enforced. The current procedure does not inform an individual subject to removal of his right to apply for withholding of deportation or of the opportunity to present any fear of persecution or harm upon return to the designated country; may provide no notice or opportunity to be heard if the United States receives certain assurances from the receiving country; and provides notice only twenty-four hours or less prior to removal. As such, the policies provided in the ICE memo, if implemented without further procedures, would violate the noncitizen's due process rights. *See A. A. R. P.*, 605 U.S. at 95; *Andriasian*, 180 F.3d at 1041.

### IV.   CONCLUSION

Based on the above, the Court **ORDERS** as follows:

1. The Petition for Writ of Habeas Corpus [ECF No. 1] is **GRANTED**.

///

2. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3).

3. Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for his removal and follow all applicable statutory and regulatory procedures.

4. Respondents are **ENJOINED** from removing Petitioner to a third country unless they adhere to the following procedures:

    a. provide written notice to Petitioner and Petitioner's counsel in a language Petitioner can understand;

    b. provide Petitioner a meaningful opportunity, and a minimum of <u>ten days</u>, to raise a fear-based claim for CAT protection prior to removal;

    c. if Petitioner demonstrates reasonable fear of removal to the country, Respondents must move to reopen Petitioner's immigration proceedings;

    d. if Petitioner is not found to have demonstrated a reasonable fear of removal to the country, Respondents must provide a meaningful opportunity, and a minimum of <u>fifteen days</u>, for Petitioner to seek reopening of his immigration proceedings.

5. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated:  March 11, 2026

                                                         Honorable Linda Lopez
                                                         United States District Judge